UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**DEVLIN DEAN DAVEY,**

    Plaintiff,

  v.                                                             **Case No. 20-CV-651**

**KEVIN KREMBS,** *et al.***,**

    Defendants.

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Devlin Dean Davey, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. He asserts staff members at two correctional institutions provided him inadequate medical treatment. The defendants move for summary judgment on the grounds that Davey failed to exhaust his administrative remedies. Davey opposes the motion. For the reasons explained below, I will grant the defendants' motion for summary judgment and dismiss this case.

### FACTS

The facts in this section are taken from Davey's complaint (ECF No. 1) and the defendants' proposed findings of fact and declarations in support of the motion for summary judgment (ECF Nos. 23–25). Davey submitted a one-page response to the defendants' motion and several exhibits in support. (ECF No. 31.) Because Davey did not respond to the defendants' facts as required under Civil L. R. 56(b)(2)(B), I will deem those facts admitted for purposes of this decision. *See* Civil L. R. 56(b)(4); *Smith*

*v. Lamz*, 321 F.3d 680, 6'83 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). I will consider the proposed facts only to the extent they are supported by evidence in the record and will consider arguments in the supporting memoranda only to the extent they properly refer to the proposed facts. *See* Fed. R. Civ. Pro. 56(c)(1); Civil L. R. 56(b)(1)(C)(i) and (b)(6).

Davey is incarcerated at Racine Correctional Institution ("RCI") and has been since January 13, 2020. (ECF No. 23, ¶ 1.) He was at Dodge Correctional Institution ("DCI") from September 2018 through January 2019; at RCI from January 2019 through November 2019; and again at DCI from November 2019 through January 13, 2020, when he again returned to RCI. (*Id.*) On July 17, 2020, I screened Davey's complaint and allowed him to proceed on Eighth Amendment claims against a Jane Doe Registered Nurse (later substituted with Abby Buwalda), Jane Doe Health Services Unit Personnel (later substituted with Kelly Delaney), and Dr. Kevin Krembs. (ECF Nos. 8, 13 & 19.) Davey alleges that when he entered DCI in September 2018, Buwalda knew he had difficulties walking but failed to provide him a walking aid; Delaney failed to schedule his appointments between September and December 2018; and Dr. Krembs delayed treatment of his shoulder. (ECF No. 1 at 2–3; ECF No. 23, ¶ 2.)[1]

---

[1] Dr. Krembs retired from state service on May 7, 2019. (ECF No. 23, ¶ 3; ECF No. 25-1.)

*Early Inmate Complaints*

Davey submitted inmate complaints about his shoulder issues that the institutional complaint examiner ("ICE") office received on April 22, 2019; December 16 or 18, 2019;[2] and January 24, 2020. (ECF No. 23, ¶ 8; ECF No. 24-3 at 2; ECF No. 24-4 at 2; ECF No. 24-5 at 3.) An ICE returned each of those complaints because they did not comply with sections of the Wisconsin Administrative Code. (ECF No. 23, ¶ 9; ECF No. 24-3 at 1; ECF No. 24-4 at 1; ECF No. 24-5 at 1.) The April 22, 2019 complaint was returned because Davey did not use the form supplied by the institution, did not include relevant supporting documentation, complained about multiple issues in a single complaint, and complained about an issue that occurred at DCI after he had been transferred to RCI. (ECF No. 24-3 at 1 (citing Wis. Admin. Code §§ DOC 310.07(3)(a), (3)(f) and (5)).) The December 2019 complaint was returned because Davey failed to attempt to resolve the issue informally before submitting the complaint. (ECF No. 24-4 at 1 (citing Wis. Admin. Code § DOC 310.07(1)).) The January 24, 2020 complaint was returned because Davey failed to attempt to resolve the issue informally before submitting the complaint, complained about multiple issues in a single complaint, and complained about an issue that occurred at DCI after he had been transferred to RCI. (ECF No. 24-5 at 1 (citing Wis. Admin Code §§ DOC 310.07(1) & (5)).)

---

[2] The received-on date stamped on the complaint is December 16, 2019, but the return letter to Davey states the complaint was received December 18, 2019. (ECF No. 24-4 at 1–2.) The discrepancy is immaterial for purposes of this decision.

In each return letter, the ICE instructed Davey to correct the problems with his complaint and resubmit it. (ECF No. 23, ¶ 10; ECF No. 24-3 at 1; ECF No. 24-4 at 1; ECF No. 24-5 at 1.) Davey did not submit corrected complaints for any of the three that were returned. (ECF No. 23, ¶ 11; ECF No. 24, ¶ 13.)

*February 2020 Complaint*

The defendants contend the ICE's office received Davey's only "possibly relevant" inmate complaint on February 11, 2020. (ECF No. 23, ¶¶ 4–5; ECF No. 24-2 at 1, 14.) Davey's stated issue in the complaint was that he was "not being treated for my dislocated shoulder for 14 ½ months." (ECF No. 23, ¶ 6; ECF No. 24-2 at 14.) He elaborated that on January 28, 2020, he had an appointment with a surgeon at St. Luke's Hospital, and the surgeon told him his "shoulder should of only sat out of sockett for about a week however it sat out for 14 & ½ months causing permenant damage to my shoulder." (ECF No. 23, ¶ 7; ECF No. 24-2 at 14.)

An ICE reviewed Davey's February 11, 2020, complaint about his injured shoulder. (ECF No. 23, ¶ 12; ECF No. 24-2 at 2–3.) The ICE noted Davey had received shoulder surgery on November 4, 2019. (ECF No. 23, ¶ 13; ECF No. 24-2 at 3.) She also noted Davey's past complaints that Davey failed to correct and resubmit and investigated his medical history from August 5, 2019 (90 days before his shoulder surgery) through January 2020. (ECF No. 23, ¶ 13; ECF No. 24-2 at 3.) Because Davey was confined at RCI from August to November 2019 (and at the time he submitted his inmate comlaint), the ICE did not investigate his allegations pertaining to treatment he received at DCI. (ECF No. 23, ¶ 14; ECF No. 24, ¶ 18.) The ICE

4

recommended dismissing Davey's complaint because his medical records "confirmed that he had received regular care for his shoulder." (ECF No. 23, ¶ 15; ECF No. 24-2 at 3.) The reviewing authority agreed with the ICE's recommendation and dismissed Davey's complaint on March 10, 2020. (ECF No. 23, ¶ 16; ECF No. 24-2 at 5.)

Davey appealed the dismissal of his inmate complaint. (ECF No. 23, ¶ 17; ECF No. 24-2 at 63.) His appeal reiterated much of what he said in his complaint: "On 1-28-2020 I seen my surgeon [and] he told me that I had permanant DAMAGE because it sat out for 14 ½ month's he said the longest it should of stayed out on average was a week. Im not satisfied with the action because it was dismissed." (ECF No. 23, ¶ 18; ECF No. 24-2 at 63.) A corrections complaint examiner reviewed the record but did not investigate further. (ECF No. 23, ¶ 19; ECF No. 24-2 at 7.) The corrections complaint examiner recommended dismissing the appeal because Davey had received treatment for his shoulder injury, continued to receive care at RCI, and received an appropriate response to his complaint. (ECF No. 23, ¶ 20; ECF No. 24-2 at 7.) The office of the secretary agreed with the recommendation, accepted the examiner's decision as its own, and dismissed Davey's appeal on March 30, 2020. (ECF No. 23, ¶ 21; ECF No. 24-2 at 8.) On April 24, 2020, Davey brought his § 1983 complaint in this court. (ECF No. 1.)

Davey attached to his response to the defendants' motion the report and documents regarding his February 11, 2020 complaint. (ECF No. 31-1 at 1–6.) He also submitted several Health Service Request forms and Interview/Information Requests. (*Id.* at 7–22.) Many of the forms are blurred and partially or completely

5

unreadable. (*Id.* at 7–11, 15, 18, 20.) The requests are from as early as January 2019, and most were responded to, often by telling Davey that he had an upcoming appointment during which he needed to voice his concerns with the medical professional. (*Id.* at 7–22.)

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ANALYSIS

Under the Prison Litigation Reform Act ("PLRA"), an inmate cannot bring a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion requires that an inmate comply with the rules applicable to the grievance

6

process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the prison's policy," *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (citing *Woodford*, 548 U.S. at 93). "Substantial compliance with administrative remedies" does not satisfy the PLRA, *Farina v. Anglin*, 418 F. App'x 539, 543 (7th Cir. 2011) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001), and *Dole*, 438 F.3d at 809); and there is no "futility exception" to exhaustion under the PLRA, *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 537 (7th Cir. 1999) (citing *Greene v. Meese*, 875 F.2d 639, 641 (7th Cir. 1989)); *see Booth*, 532 U.S. at 741. But a prisoner is not required to exhaust administrative remedies if those remedies are not "available." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that Davey failed to exhaust. *See Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

Wisconsin has established an Inmate Complaint Review System to allow inmates to file complaints about policies, rules, living conditions, and staff actions at their institutions. Wis. Admin. Code § DOC 310.06. Inmates must exhaust all administrative remedies that the Department of Corrections has promulgated by rule

before commencing a civil action against an officer, employee, or agent of the DOC. *Id.* § DOC 310.05. Although an inmate need not "need not lay out the facts, articulate legal theories, or demand particular relief," the inmate complaint must "alert[] the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

Before filing a formal complaint, an inmate must first attempt to resolve the issue informally within his institution. Wis. Admin. Code § DOC 310.07(1). If the issue is not resolved, the inmate must then file a complaint with the ICE within fourteen calendar days of the incident. *See id.* § DOC 310.07(2). Each inmate complaint "may contain only one clearly identified issue" and "must contain sufficient information for the department to investigate and decide the complaint." *Id.* § DOC 310.07(5)–(6). The ICE may return an inmate complaint if it violates those rules and allow the plaintiff an opportunity to correct and resubmit a returned complaint. *Id.* § DOC 310.10(5). The inmate receives only one opportunity to correct the complaint and must resubmit the corrected complaint within ten days. *Id.* If the ICE accepts the complaint, she must assign a file number and classification code to the complaint and provide notice to the inmate that the complaint was received. *Id.* § DOC 310.10(3)–(4). The inmate must appeal any adverse decision within fourteen days of the ICE's decision and await a final decision from the Office of the DOC Secretary. *Id.* §§ DOC 310.12 & 310.13.

The defendants note that Davey's claims on which he seeks to proceed involve conduct by the defendants between September 2018 and, at the latest, May 2019,

when Dr. Krembs retired. (ECF No. 22 at 11.) They assert Davey failed to exhaust his administrative remedies for those claims because he never resubmitted the inmate complaints returned to him between April 2019 and January 2020. (*Id.*) The defendants contend that Davey's February 11, 2020 complaint did not exhaust his administrative remedies because that complaint "covered only the 90-day period from August 5, 2019 to November 4, 2019," well after the conduct forming the basis for his § 1983 action. (*Id.*) Davey in response states merely that he "has exhausted all administrative remedies" and generally cites his attached documents. (ECF No. 31.)

*Abby Buwalda*

Davey's claim against Buwalda is that she failed to provide him a walking aid after his intake process at DCI in September 2018. Davey's February 11, 2020 complaint does not address this incident or mention Buwalda (or a Jane Doe Registered Nurse, as he named her in his § 1983 complaint).

Davey discusses this incident in his April 2019 complaint. (ECF No. 24-3 at 2.) He notes that during his intake screening at DCI, he "made nurse and staff aware I needed assistance getting around." (*Id.*) A nurse (presumably Buwalda) told him he "would be fine, and that it would be taken care of, [but] nothing was." (*Id.*) He states that on September 26, 2018, he again requested a cane through a health services request slip but still did not receive a walking aid. (*Id.*) A few days later, he fell and injured his arm and shoulder. (*Id.*) An ICE returned the April 2019 complaint to Davey for several reasons, but Davey never corrected and resubmitted the complaint.

(ECF No. 24-3 at 1.) Davey does not provide a reason why he failed to correct and return the complaint.

Davey also mentions his fall in his December 2019 and January 2020 grievances that he submitted while at DCI. (ECF No. 24-4 at 2; ECF No. 24-5 at 3.) An ICE also returned those complaints to Davey and instructed him to correct their errors and resubmit them. (ECF No. 24-4 at 1; ECF No. 24-5 at 1.) Davey never corrected and resubmitted the complaints. After Davey was transferred to RCI, however, he wrote an interview/information request stating that he "never rec[ei]ved a response" to his December 2019 grievance and asking "can you please tell me if its still pending [and] will it be transfer[re]d here." (ECF No. 24-2 at 28.) An ICE responded to Davey telling him that the return letter was sent December 18, 2019, and informing him to "let ICE know if you <u>did not</u> receive the letter." (*Id.*) The ICE informs Davey that he "may also re-file your complaint at RCI with documentation to support your issue." (*Id.*) There is no evidence, and Davey does not say, whether he responded to the ICE about his December 2019 complaint or received the return letter. Nor does the February 2020 complaint appear to be the December 2019 resubmitted at RCI as the ICE suggested Davey do. Although it also is about his shoulder treatment, he bases his complaint off what the surgeon at St. Luke's Hospital told him on January 28, 2020—a few weeks after he had been transferred back to RCI.

None of these grievances suffices to exhaust Davey's administrative remedies for his claim against Buwalda. His fall occurred in September 2018, and the

10

complaints were filed months later—well outside the fourteen-day window for submitting a grievance. Davey's April 2019 grievance addresses his fall and not being provided a walking aid, but he did not properly submit that complaint and failed to correct and resubmit it after the ICE returned it to him unfiled. Davey's December 2019 and January 2020 grievances are not even about his fall. He discusses the fall only as the origin of his injury and then grieves the lack of treatment, much like his February 2020 complaint. Although it is possible Davey never received the return letter instructing him to correct his December 2019 complaint, that grievance was both unrelated to his fall and untimely. Correcting and resubmitting that complaint would not have exhausted his administrative remedies for his claim regarding his September 2018 fall.

Davey also mentions this incident in an interview/information request form submitted on December 22, 2019. (ECF No. 24-2 at 27.) But this, too, was submitted over a year after his fall occurred, well outside of the fourteen-day period to submit a grievance. Even if it were timely, health service request forms and interview/information request forms do not suffice to exhaust administrative remedies. *See Dionne v. Majewski,* No. 15-C-190, 2016 WL 1050283, at *2 (E.D. Wis. Mar. 16, 2016) (quoting *Whiteside v. Pollard,* No. 10-C-725, 2012 WL 1580430, at *1 (E.D. Wis. May 4, 2012) ("[R]equests made through health services do not constitute proper exhaustion under Wisconsin's administrative rules.")).

The evidence shows Davey failed to submit a timely grievance about Buwalda's September 2018 actions. His earliest grievance about her actions was submitted

11

months after the alleged incident, and he failed to complete the administrative process for that grievance. His later grievances do not address Buwalda's actions and were returned to him unfiled. Davey's only timely, completed grievance does not mention Buwalda's alleged actions from September 2018. Davey therefore failed to exhaust his administrative remedies for his claim against Buwalda, for whom I will grant summary judgment.

*Kelly Delaney*

I permitted Davey to proceed on a claim that Delaney failed to schedule him for doctor's appointments at DCI between September and December 2018. As with his claim against Buwalda, Davey does not mention Delaney or his unscheduled appointments in his February 2020 complaint. Nor do any of his earlier complaints mention a nurse failing to schedule him for appointments. Those grievances generally complain about not receiving medical care for his shoulder and name several doctors who failed to provide proper medical treatment. But none state that a nurse failed or refused to set up his appointments. Davey does not even reference Delaney (or a Jane Doe nurse) in his interview/information requests or health services requests, though as noted those forms would not suffice to exhaust his administrative remedies. Even if Davey had mentioned issues with Delaney failing to schedule his appointments in any of his grievances or forms, his claim involves her actions from September to December 2018. His earliest grievance is from April 2019, well beyond the fourteen-day window to grieve her actions.

12

Davey never raised with DCI his claim against Delaney on which he now seeks to proceed. Because Davey failed to grieve Delaney's alleged actions, he did not exhaust his administrative remedies for his claim against her. I will grant summary judgment for Delaney.

*Dr. Krembs*

Davey alleges in his February 2020 inmate complaint (the only one for which he completed the grievance process) that he learned when he saw a surgeon on January 28, 2020, that his shoulder should not have sat out of its socket as long as it did. (ECF No. 24-2 at 14.) It is possible that, although Davey was not receiving proper treatment in 2018 and 2019 and failed to grieve his lack of treatment, he did timely file a grievance within fourteen days of learning from the surgeon that his shoulder was irreparably damaged.

Nonetheless, it is undisputed that Dr. Krembs retired from his position with the DOC in May 2019. That is, therefore, the latest he could have provided (or failed to provide) treatment for Davey's shoulder. Davey's April 2019 grievance does not mention Dr. Krembs but generally states that he has not received proper care for his shoulder. He states that, at the time, he had been untreated for a dislocated shoulder for seven months. (ECF No. 24-3 at 3.) Davey also discusses his treatment with Dr. Krembs in his December 2019 complaint: "At this time I was under the care of Dr. Krembs at RCI and I was seen by him after 4 months of being at RCI[.] [B]y this time I needed surgery. For 8 months I was in terrible pain and was as of yet untreated." (ECF No. 24-4 at 2.)

13

Davey's complaints show he was in pain and believed his treatment deficient at the time Dr. Krembs treated him sometime before May 2019. Yet he grieved the treatment of his shoulder only twice, the latter of which was seven months after the latest time Dr. Krembs could have treated him. Moreover, Davey did not complete the grievance process for either 2019 complaint, which were never filed. Even if they were, his December 2019 complaint (and possibly his April 2019 complaint) would have been too late to exhaust his administrative remedies for his claim against Dr. Krembs.

That Davey completed the grievance process for his February 2020 complaint, which also generally contests the treatment of his shoulder, does not suffice to exhaust his administrative remedies against Dr. Krembs for providing him treatment at least nine months earlier. The proper time to grieve Dr. Krembs's treatment was within fourteen days of treatment, and Davey's grievances reveal he believed at that time his treatment was inadequate. Davey has not provided any explanation for his failure to timely complete the grievance process for his claim against Dr. Krembs.

Davey failed to exhaust his administrative remedies before bringing this lawsuit under § 1983. I therefore lack the discretion to resolve his claims on the merits, *see Perez*, 182 F.3d at 535, and must dismiss the complaint without prejudice, *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (explaining that "*all* dismissals under § 1997e(a) should be without prejudice").

14

## ORDER

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment on exhaustion grounds (ECF No. 21) is **GRANTED**.

This case is **DISMISSED** without prejudice. The clerk's office shall enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal my decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. I cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. I cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 12th day of February, 2020.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge